NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4318-14T2

RUTGERS UNIVERSITY STUDENT
ASSEMBLY (RUSA), MATTHEW CODEIRO,
GABRIELA AGATA GRYZBOWSKI, BETH
ROSE BRESLAW, EDWARD JAMES
VASCONCELLOS, III, BON-JIN KUN,
ANNALEE SWITEK, LATINO LEADERSHIP
ALLIANCE OF NEW JERSEY (LLANJ),
NEW JERSEY CITIZEN ACTION (NJCA),
and THE AMERICAN CIVIL LIBERTIES
UNION OF NEW JERSEY (ACLU-NJ),

> APPROVED FOR PUBLICATION
>
> **July 1, 2016**
>
> **APPELLATE DIVISION**

     Plaintiffs-Appellants,

v.

MIDDLESEX COUNTY BOARD OF
ELECTIONS and DANIEL FRANKEL,
COMMISSIONER OF REGISTRATIONS
OF MIDDLESEX COUNTY,

     Defendants-Respondents.

_____

     Argued May 11, 2016 — Decided July 1, 2016

     Before Judges Ostrer, Haas and Manahan
     (Judge Ostrer concurring).

     On appeal from Superior Court of New Jersey,
     Law Division, Middlesex County, Docket No. C-
     85-11.

     Renee Steinhagen and Amy Jane Agnew argued
     the cause for appellants (Rutgers
     Constitutional Litigation Clinic, American
     Civil Liberties Union of New Jersey
     Foundation, and Appleseed Public Interest Law

Center, attorneys; Frank Askin, Edward
Barocas, Ms. Steinhagen, and Ms. Agnew, on
the briefs).

George N. Cohen, Deputy Attorney General,
argued the cause for respondents (Robert
Lougy, Acting Attorney General, attorney;
Melissa H. Raksa, Assistant Attorney General,
of counsel; Mr. Cohen, on the brief).

Lowenstein Sandler, LLP, and Yael Bromberg,
attorneys for amicus curiae Common Cause
(Naomi D. Barrowclough, Ms. Bromberg, and
Paul A. Weissman, of the New York Bar,
admitted pro hac vice, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

In this case, we address the constitutionality of N.J.S.A. 19:31-6.3(b), which requires all eligible persons to register to vote no later than twenty-one days prior to an election. Plaintiffs assert they should be permitted to register to vote on election day, and that the twenty-one-day advance registration requirement improperly infringes on their right to vote under N.J. Const. art. II, § 1, ¶ 3(a). Based upon our review of the record and applicable law, we conclude that the statute furthers the fundamental State interest in preserving the integrity of New Jersey's electoral process, while imposing no unreasonable burden upon plaintiffs' right to vote. Therefore, we conclude that N.J.S.A. 19:31-6.3(b) is constitutional, and we affirm the trial

court's order granting defendants' motion for summary judgment and dismissing plaintiffs' complaint.

I.

This case returns to us following a remand to permit the trial judge to provide additional findings of fact and conclusions of law concerning defendants' justification for maintaining the twenty-one-day advance registration requirement. Rutgers Univ. Student Assembly (RUSA) v. Middlesex Cty. Bd. of Elections, 438 N.J. Super. 93, 107 (App. Div. 2014). We assume familiarity with, and incorporate by reference, the underlying procedural history and background facts contained in our prior opinion. Id. at 95-101. We therefore recite only the most salient facts here.

In order to vote in any election, an eligible voter must register "in the manner" provided by law. N.J.S.A. 19:31-1. In pertinent part, N.J.S.A. 19:31-6.3(b), states:

> Any person entitled to register to vote may register as a voter in the election district in which that person resides at any time prior to the [twenty-first] day preceding any election by completing a registration form . . . and submitting the form to the commissioner of registration of the county wherein the person resides or alternatively, in the case of a registration form provided by the employees or agents of a public agency or a voter registration agency, . . . to those employees or agents or to the Attorney General.

Plaintiffs[1] are four voluntary associations and their present or former presidents, and five current or former college students. RUSA, supra, 438 N.J. Super. at 98. In their complaint, plaintiffs alleged that, because of improvements in the State's ability to combat voter fraud through the implementation of a computerized "Statewide voter registration system" (SVRS), there was no longer any need for an advance registration requirement in New Jersey. Id. at 99-100. In light of this advancement, "plaintiffs asserted that 'New Jersey's [twenty-one]-day advance-registration requirement, embodied in N.J.S.A. 19:31-6, severely burdens the right to vote of thousands of New Jersey residents [and] prevents otherwise eligible citizens from casting a ballot and having their ballot count.'" Id. at 98-99.

In their motion for summary judgment, "plaintiffs argued that only a system of permitting voters to register on the same day as an election is constitutional and that pre-election day registration requirements violate an individual's constitutional right to vote." Id. at 99. In response, defendants asserted that the twenty-one-day advance registration requirement imposes

---

[1] In their complaint, plaintiffs named the board of elections and the commissioner of registrations for the county in which the students attended school as defendants. RUSA, supra, 438 N.J. Super. at 99.

no measurable burden upon the right to vote.  <u>Ibid.</u>  In addition, "[d]efendants contended advance registration was needed 'to prevent voter fraud and ensure public confidence in the integrity of the electoral process.'"  <u>Ibid.</u>

In granting defendants' motion for summary judgment, the trial

> judge rejected plaintiffs' contention that [<u>N.J.S.A.</u> 19:31-6.3(b)] should be subjected to a "strict scrutiny" standard in determining its constitutionality.
>
> Rather, the judge held that the "balancing test" established by the United States Supreme Court in <u>Burdick v. Takushi</u>, 504 <u>U.S.</u> 428, 433-34, 112 <u>S. Ct.</u> 2059, 2063, 119 <u>L. Ed.</u> 2d 245, 253 (1992) should be applied.  Under the <u>Burdick</u> test, the judge stated that "the character and magnitude of the asserted injury [to plaintiffs must] be weighed against the State's interest in burdening its citizen's right to vote."
>
> [<u>Id.</u> at 101.]

In applying the <u>Burdick</u> balancing test, however, the judge only considered the first prong, finding that New Jersey's twenty-one-day advance registration requirement imposed only a "minimal" burden upon plaintiffs.  <u>Ibid.</u>  "However, the judge did not complete, or even discuss, the second part of the <u>Burdick</u> balancing test."  <u>Ibid.</u>  Because the judge did not determine whether "defendants' interest in the advance registration requirement outweighed the burden imposed on plaintiffs' right to

vote[,]" we remanded the matter so that the judge could address this issue. Id. at 106.[2]

On remand, the judge again determined that the Burdick balancing test was appropriate.[3] The judge found that the burden placed on plaintiffs by the advance registration requirement was "minimal and slight and not unlike similar requirements required of individuals, young and old, in the course of their everyday lives."

Turning to the second part of the Burdick test, the judge stated that there was no evidence in the record that advance registration was necessary "to counteract fraud." However, the judge found that N.J.S.A. 19:31-6.3(b) nevertheless served the "legitimate [State] interest in ensuring public confidence in the integrity of the electoral process." Pointing to the deposition testimony of the chief clerk of the county board of elections, the judge found that it took the board seven full days, with thirty employees overtime, before it completed its review of 5617 provisional ballots filed on election day in 2008. Plaintiffs contended that, if same-day registration were adopted, approximately 250,000 unregistered individuals could appear at

---

[2] We did not retain jurisdiction. Id. at 107.

[3] In our decision remanding the matter to the trial court, we "assume[d], without ruling, that the application of this test was proper." Id. at 104.

polling places in New Jersey at each election seeking to vote. If that occurred, the judge concluded that "weeks would pass before the provisional ballots [cast by previously unregistered voters] could be properly processed and verified."

In addition to the dramatic increase in costs, the judge found that delayed election results would "creat[e] uncertainty, tension[,] and likely increased litigation as to election outcomes." Accordingly, the judge concluded that "[t]he interest in preserving the public's confidence in the integrity of the electoral process is a compelling one. The proofs before the court do not demonstrate that integrity can be preserved with election day registration." This appeal followed.

## II.

On appeal, plaintiffs argue that, in granting summary judgment to defendants, the trial judge "erred in not applying strict scrutiny as the standard of review." They also assert that, even if a balancing test was applied to determine the constitutionality of N.J.S.A. 19:31-6.3(b), the balance should have been struck in their favor. We disagree.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). "Summary judgment must be granted if 'the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)).

Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995)). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), certif. denied, 195 N.J. 419 (2008). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

In determining the constitutionality of any statute, we bear in mind the following fundamental principles. Statutes are presumed to be constitutional. DePascale v. State, 211 N.J. 40, 63 (2012). This is because

> [i]n our tripartite form of government
> [judicial review of legislation] has always
> been exercised with extreme self[-]restraint,
> and with a deep awareness that the challenged

enactment represents the considered action of a body composed of popularly elected representatives. As a result, judicial decisions from the time of Chief Justice Marshall reveal an unswerving acceptance of the principle that every possible presumption favors the validity of an act of the Legislature. . . . [A]ll the relevant New Jersey cases display faithful judicial deference to the will of the lawmakers whenever reasonable men [or women] might differ as to whether the means devised by the Legislature to serve a public purpose conform to the Constitution.

[N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8, appeal dismissed sub nom., Borough of E. Rutherford v. N.J. Sports & Exposition Auth., 409 U.S. 943, 93 S. Ct. 270, 34 L. Ed. 2d 215 (1972).]

For those reasons, a statute "will not be declared void unless it is clearly repugnant to the Constitution." Trautmann ex rel. Trautmann v. Christie, 211 N.J. 300, 307 (2012) (quoting Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985)). A party seeking to rebut "[t]he strong presumption of constitutionality that attaches to a statute . . . [must] show[] that the statute's 'repugnancy to the Constitution is clear beyond a reasonable doubt.'" Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 285 (1998) (quoting Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 388 (1959)), cert. denied, 527 U.S. 1021, 119 S. Ct. 2365, 155 L. Ed. 2d 770 (1999). For the reasons discussed below, we conclude plaintiffs have failed to carry that heavy burden.

A.

We first address plaintiffs' contention that the trial judge "erred in not applying strict scrutiny as the standard of review." Plaintiffs assert that because the advance registration requirement established in N.J.S.A. 19:31-6.3(b) infringes upon the right to vote of anyone who does not register to vote twenty-one days prior to an election, a strict scrutiny standard must be applied. However, as we implied, but did not hold, in our prior decision, we are satisfied that the Burdick balancing test was the appropriate method for determining the constitutionality of N.J.S.A. 19:31-6.3(b). RUSA, supra, 438 N.J. Super. at 104.

As we noted in RUSA, "the right to vote is fundamental." Id. at 102 (citing Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, 226 (1886)). Indeed, our State Constitution "devotes an entire article enumerating the rights and duties associated with elections and suffrage." In re Attorney Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps.", 200 N.J. 283, 302 (2009) (citing N.J. Const. art. II).

However, states are entitled to broad leeway in regulating elections to ensure they are carried out in a fair and efficient manner. Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S. Ct. 1564, 1569, 75 L. Ed. 2d 547, 557 (1983). One of the ways this

10

is done is through advance voter registration laws such as N.J.S.A. 19:31-6.3(b). As our Supreme Court observed over fifty years ago:

> Registration is familiar in the area of voting itself. It is not a qualification for voting, for the Constitution exhausts that subject in [N.J. Const. art. II]. Rather registration is upheld as part of the regulatory machinery intended to protect the right to vote. The reason is that without a suitable method to prepare an authentic list of qualified voters in advance of election day, the confusion at the polls and the opportunity for fraudulent ballots might jeopardize the election process.
>
> [Gangemi v. Rosengard, 44 N.J. 166, 172-73 (1965).]

Indeed, when our 1947 Constitution was adopted, N.J.S.A. 19:31-6.3(b) included a forty-day advance registration requirement. L. 1940, c. 135, § 2. The framers were obviously aware of, but did nothing to disturb, this well-established requirement when they adopted N.J. Const. art. II. Cf. Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 449 (2012) (noting that courts "presume that the Legislature was aware of its own enactments").

In determining whether advance registration laws similar to N.J.S.A. 19:31-6.3(b) are valid, courts have consistently applied the balancing test established in Burdick. In that case, the United States Supreme Court considered "whether Hawaii's

prohibition on write-in voting unreasonably infringe[d] upon its citizens' rights under the First and Fourteenth Amendments." Burdick, supra, 504 U.S. at 430, 112 S. Ct. at 2061, 119 L. Ed. 2d at 251. Acknowledging the fundamental right to vote, the Court wrote:

> The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections. Sugarman v. Dougall, 413 U.S. 634, 647, 37 L. Ed. 2d 853, 93 S. Ct. 2842 (1973); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 217, 93 L. Ed. 2d 514, 107 S. Ct. 544 (1986). Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Storer v. Brown, 415 U.S. 724, 730, 39 L. Ed. 2d 714, 94 S. Ct. 1274 (1974).
>
> [Id. at 433, 112 S. Ct. at 2063, 119 L. Ed. 2d at 252-53 (alteration in original).]

Thus, recognizing that "[e]lection laws will invariably impose some burden upon individual voters[,]" id. at 433, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253, the Court held that a flexible analytical approach, rather than strict scrutiny, was needed:

> Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to

12                                                          A-4318-14T2

advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently. Accordingly, the mere fact that a State's system "creates barriers . . . does not of itself compel close scrutiny." Bullock v. Carter, 405 U.S. 134, 143, 31 L. Ed. 2d 92, 92 S. Ct. 849 (1972); Anderson, supra, at 788, 75 L. Ed. 2d 547, 103 S. Ct. 1564; McDonald v. Board of Election Comm'rs of Chicago, 394 U.S. 802, 22 L. Ed. 2d 739, 89 S. Ct. 1404 (1969).

Instead, as the full Court agreed in Anderson, 460 U.S. at 788-789; id., at 808, 817 (REHNQUIST, J., dissenting), a more flexible standard applies. A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." Id., at 789; Tashjian, supra, at 213-214.

[Id. at 433-34, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253 (citation omitted).]

The Court continued:

Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." Norman v. Reed, 502 U.S. 279, 289, 116 L. Ed.

2d 711, 112 S. Ct. 698 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. Anderson, 460 U.S. at 788; see also id., at 788-789, n. 9.

[Id. at 433-434, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253-54.]

Applying the Burdick standard, the District Court of the Southern District of Florida upheld that state's twenty-nine-day advance registration requirement. Diaz v. Cobb, 541 F. Supp. 2d 1319, 1329-33 (S.D. Fla. 2008). The court noted "[t]he Supreme Court has not subjected registration guidelines to the strict scrutiny test. Instead, it has consistently treated them as reasonable, nondiscriminatory restrictions subject to a relaxed standard of review." Id. at 1330. Under Burdick's balancing test, the court held that Florida's advance registration requirement, which was eight days longer than the twenty-one-day requirement set in N.J.S.A. 19:31-6.3(b), did not impose a severe burden on voters. Id. at 1333-35. The court stated:

The year-round nature of voter registration, the liberal availability of voter registration applications, the assistance that election officials offer to applicants and third-party groups, the numerous means of submitting completed applications, and the requirement of prompt notice to applicants who submit incomplete applications refute any suggestion that the registration deadline practically burdens the ability of Floridians

14

to vote. Florida law provides every opportunity to applicants to effect their registrations long before books close twenty-nine days before an election.

[Id. at 1334-35.]

Similarly, in ACORN v. Bysiewicz, 413 F. Supp. 2d 119, 149 (D. Conn. 2005), the court upheld Connecticut's seven-day advance registration deadline. In determining that the Burdick balancing test was appropriate, the court noted "that such restrictions are subject to differing levels of scrutiny depending upon the severity of the burden imposed." Id. at 123. If the burden imposed on voters is severe, then strict scrutiny applies. Ibid. Conversely, "when a restriction on voting is reasonable and non-discriminatory[,] . . . a state's important regulatory interests ordinarily are sufficient to justify the requirement." Ibid.

In upholding Connecticut's advance registration requirement, the court observed:

> Although it may be true that registering in advance is not as convenient as registering on election day, requiring citizens to take one or two minutes of their time to register to vote seven days before a general election cannot reasonably be characterized as a severe burden on the right to vote. Over thirty years ago, Justice Stewart, writing for the Supreme Court, upheld the constitutionality of a registration requirement that was far more onerous than Connecticut's, and his words in that case aptly sum up this case as well. By requiring voters to register in advance of election day, Connecticut "does not prohibit

the petitioners from voting . . . or from associating with the political party of their choice. It merely imposes a legitimate time limitation on their enrollment, which [unregistered voters] choose to disregard." Rosario v. Rockefeller, 410 U.S. 752, 762, 93 S. Ct. 1245, 36 L. Ed. 2d 1 (1973) [(upholding New York's requirement that a person must enroll in a political party at least thirty days before the November general election in order to be eligible to vote in the party's primary election held during the following year)].

[Id. at 123 (first and second alterations in original).]

Plaintiffs are unable to cite any precedent where a court has applied a strict scrutiny test to determine the constitutionality of an advance registration requirement.[4] Instead, as they did in their prior appeal, plaintiffs again primarily rely upon Worden v. Mercer County Board of Elections, 61 N.J. 325, 327-30 (1972), where the Court applied a strict scrutiny test in striking down a ruling by election officials that college students could only register to vote in their home towns rather than where their school was located. Plaintiffs also cite to Dunn v. Blumstein, 405 U.S. 330, 360, 92 S. Ct. 995, 1012, 31 L. Ed. 2d 274, 294-95 (1972), where the Supreme Court held that a twelve-month durational residency requirement was

---

[4] Indeed, plaintiffs have not pointed to any case where a twenty-one-day advance registration has ever been declared unconstitutional.

unconstitutional because the state failed to demonstrate that the requirement was needed to promote a compelling governmental interest.

However, both Worden and Dunn are readily distinguishable from the case at hand because they both addressed regulations where similarly situated citizens were treated differently, resulting in the exclusion of a large number of otherwise eligible voters. Worden, supra, 61 N.J. at 348; Dunn, supra, 405 U.S. at 360, 92 S. Ct. at 1012, 31 L. Ed. 2d at 294. Here, New Jersey's twenty-one-day advance registration requirement subjects all eligible persons to the same voter registration standards, regardless of where they live.

Indeed, in Worden, the Court specifically noted that because the students would be required to register in advance of the election, like all other citizens of the municipality, the State's interest in preventing fraudulent voting would be protected. Worden, supra, 61 N.J. at 346-48. Similarly, in Dunn, the Supreme Court found that Tennessee's thirty-day advance registration requirement served the same purpose of ensuring the integrity of the electoral process as that state's much lengthier durational residency rule. Dunn, supra, 405 U.S. at 346, 92 S. Ct. at 1005, 31 L. Ed. 2d at 286. Thus, both courts recognized the importance of advance registration requirements to the

electoral process and their applicability to all prospective voters.

After fully considering the appropriate legal principles, we conclude that New Jersey's twenty-one-day advance registration requirement is the type of "reasonable, non-discriminatory restriction[]" which warrants the application of the Burdick balancing test. Burdick, supra, 504 U.S. at 434, 112 S. Ct. at 2063, 119 L. Ed. 2d at 254.

### B.

Applying the first prong of the Burdick test, we agree with the trial judge that the twenty-one-day advance registration requirement established in N.J.S.A. 19:31-6.3(b) imposes no more than a minimal burden upon plaintiffs' right to vote. As we observed in our prior opinion, New Jersey statutes ensure that our citizens have ample opportunities to register to vote in order to comply with the statute:

> An eligible person may register to vote in person or by mail. N.J.S.A. 19:31-6. Blank registration forms are available to be downloaded from the internet. "A registration form postmarked, stamped or otherwise marked as having been received from the registration applicant, on or before the [twenty-first] day preceding any election shall be deemed timely." N.J.S.A. 19:31-6.3[(b)].
>
> Individuals may register to vote at numerous governmental offices, and registration forms are available in English

and a variety of other languages. All 565 municipal clerks and the twenty-one county commissioners of registration are required to provide individuals with voter registration applications and information. N.J.S.A. 19:31-6.

"Public agencies"[] must also accept voter registration applications. N.J.S.A. 19:31-6.3. In addition, many other governmental entities[] are designated as "voter registration agencies" and are required to engage in active voter registration activity, which includes displaying voter registration information and providing registration application forms to citizens. N.J.S.A. 19:31-6.11[(b)]. Individuals can also obtain forms through voter registration drives conducted by candidates, political parties, and non-partisan groups. N.J.A.C. 13:17-1.4.

In addition, whenever an individual completes a provisional ballot affirmation statement at a polling place on the day of an election, the provisional ballot will be considered the voter registration for any person later determined to be unregistered at the time he or she submitted the provisional ballot. N.J.S.A. 19:53C-1[(b)]. This procedure ensures that these individuals are registered to vote in future elections.

[RUSA, supra, 438 N.J. Super. at 95-97.]

In this case, each of the five plaintiffs certified that they were able to register to vote more than twenty-one days in advance of the election. Id. at 98 n.6.[5] Therefore, the advance

_____

[5] Four of the students stated that, in spite of having registered to vote more than twenty-one days prior to the election, their names were not in the poll book when they arrived at the polling
(continued)

19                                                      A-4318-14T2

registration requirement certainly did not present an impermissible burden to them.[6]

## C.

We now balance the minimal burden imposed upon plaintiffs by N.J.S.A. 19:31-6.3(b) against defendants' interest in preventing voter fraud and ensuring public confidence in the integrity of the electoral process. For the following reasons, we conclude that because the twenty-one-day advance registration requirement

---

(continued)
place. Ibid. However, none of the students took advantage of the opportunity to go before a Superior Court judge on election day to explain what happened and to seek an order permitting them to vote based on their claim that they had complied with the registration requirement. Ibid. The fifth student registered to vote in her home municipality, but then attempted to vote on election day at a different polling place. Ibid.

[6] Perhaps recognizing this, plaintiffs assert that the registration requirement of N.J.S.A. 19:31-6.3(b) imposes an intolerable burden on individuals who become naturalized citizens within twenty-one days of an election, and upon citizens who are released from parole during this period, because they would have no opportunity to register to vote in that particular election. However, none of the five individual plaintiffs in this case fall into either category, and plaintiffs provided only speculative proofs as to the number of citizens in these groups, if any, that might be affected. Moreover, the alleged burden placed on these citizens is no different than the burden facing other citizens, who because they do not meet the durational residency or age requirements imposed by art. II, § 1, ¶ 3 of our Constitution, are unable to vote until those requirements are met. As noted above, "the mere fact that a State's system 'creates barriers . . . does not of itself compel close scrutiny.'" Burdick, supra, 504 U.S. at 433, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253 (quoting Bullock, supra, 405 U.S. at 143, 92 S. Ct. at 856, 31 L. Ed. 2d at 100).

A-4318-14T2

imposes only a reasonable, non-discriminatory burden on plaintiffs' right to vote, defendants' important regulatory interests are more than sufficient to justify the restriction. See Burdick, supra, 504 U.S. at 434, 112 S. Ct. at 2063, 119 L. Ed. 2d at 254.

Since the adoption of our 1947 Constitution, courts have recognized that

> [t]he Legislature may . . . regulate the exercise of the right to vote to [ensure] an orderly contest and the integrity of the outcome. Laws respecting registration are of such character. They are designed to provide for the establishment of the existence of the voter's qualifications sufficiently in advance of the election to prevent illegal voting.
>
> [In re Smock, 5 N.J. Super. 495, 501 (Law Div. 1949).]

However, plaintiffs contend that due to the adoption of the computerized SVRS in 2006, advance registration is unnecessary.

As noted in our prior opinion, "[t]he SVRS is 'the official State repository for voter registration information for every legally registered voter in this State, and . . . serve[s] as the official voter registration system for the conduct of all elections in the State.'" RUSA, supra, 438 N.J. Super. at 97 (quoting N.J.S.A. 19:31-31(a)). "An individual who appears at a polling place to vote on election day but whose name is not in the poll book, may be permitted to complete a provisional

21

ballot." Id. at 98. After the election, board officials input the information about the voter contained in the provisional ballot into the SVRS. Id. at 97. "Within no more than twenty-four hours <u>after receiving the provisional ballot</u>, the SVRS is able to determine whether the person is an eligible, registered voter." Id. at 98 (emphasis added).

Plaintiffs assert that the SVRS has rendered advance registration obsolete. They propose that unregistered voters should be permitted to simply appear at polling places on election day and complete a provisional ballot. Plaintiffs contend that defendants could then input the information about the voter contained in the provisional ballot into the SVRS, confirm the voter's identity, and determine if he or she has already voted. If the individual was found qualified to vote, the provisional ballot would be counted.

As the trial judge found, a major flaw in plaintiffs' reasoning is their belief that the post-election day verification process they propose can be accomplished within a mere twenty-four hours. The record simply does not support this claim.[7] As

---

[7] Plaintiffs complain that defendants did not submit certifications in opposition to their motion for summary judgment. However, defendants were entitled to rely upon plaintiffs' own submissions, including the depositions plaintiffs took of election officials, in support of their own motion for summary judgment. Defendants also relied upon settled case law

(continued)

the chief clerk of the county board of elections testified in her deposition, it is not possible to input all of the information contained in all of the provisional ballots within twenty-four hours. In the 2008 election, the board assigned thirty employees to process the provisional ballots after the election. Even though the board required the employees to work overtime, it still took them seven full days to review and input the information contained in just 5617 provisional ballots.

As they did before the trial court, plaintiffs assert on appeal "that advance registration potentially disenfranchises 250,000 eligible New Jersey voters at each election." Plaintiffs speculate that "over 110,000 additional votes" would be cast if unregistered individuals could appear at polling places and cast provisional ballots. We agree with the trial judge's finding that if anything approaching this number of unregistered voters filed provisional ballots on election day,

> weeks would pass before the provisional ballots could be properly processed and verified. . . . On the record before this [c]ourt, without other facts to the contrary, one envisions the proposal by plaintiffs would cause delays in the reporting of election results thus creating uncertainty, tension, and likely increased litigation as to election outcomes. . . . The interest in

(continued)
and New Jersey's election statutes to buttress their position before the trial court.

> preserving the public's confidence in the integrity of the electoral process is a compelling one. The proofs before the court do not demonstrate that integrity can be preserved with election day registration.

Plaintiffs' claim that advance registration is not needed to ensure the integrity of the electoral process also ignores the fact that the twenty-one-day advance registration requirement allows defendants to carry out critical tasks designed to protect the integrity of the electoral process. The advance registration requirement enables the commissioner of registration to send voter registration confirmation cards to registered voters. N.J.S.A. 19:31-6.5(a)(1). If the cards cannot be delivered in two days, they are returned to the commissioner of registration. Ibid. Through this process, election officials can determine whether the voter actually lives at the address claimed in his or her registration form.

This process can obviously not occur without advance registration, and while a voter's identity can be confirmed once the appropriate data is entered into the SVRS at some point after the election, there is no way to use the SVRS to immediately confirm the individual's current address without determining whether mail can be delivered to the voter at that address. The State has a strong interest in ensuring that all of its registered voters meet the constitutional and statutory

24

requirements to vote, namely having been "a resident of this State and of the county in which he claims his [or her] vote [for thirty] days" prior to the election. N.J. Const., art. II, § 1, ¶ 3. The advance registration requirement is therefore necessary to enable the State to do so.

The record indicates that there have only been two cases of confirmed voter fraud in recent years, both involving individuals who attempted to vote from addresses other than their permanent homes. As just discussed, this type of fraud can only be detected with advance registration, which permits election officials to check on a voter's residence before any vote is cast.[8] In addition to sending voter registration cards to the voter's address prior to an election, election officials "have full power and authority to visit and inspect any house, dwelling," or other accommodation to ensure that the voter actually lives at the address listed on his or her registration

---

[8] Based on this evidence, we do not agree with the trial judge's finding "that the State [did] not provide[] any evidence to support its assertion of the necessity of the advance registration requirement to counteract fraud." In any event, we concur with the Ninth Circuit's observation that the State "is not required to wait until fraud becomes rampant before taking remedial action[.]" Barilla v. Ervin, 886 F.2d 1514, 1524 (9th Cir. 1989) (upholding Oregon's twenty-day advance registration requirement), overruled on other grounds, Simpson v. Lear Astronics Corp., 77 F.3d 1170 (9th Cir. 1996).

form. N.J.S.A. 19:32-5. This would not be possible without advance registration.

Defendants also demonstrated that, absent advance registration, official election district challengers would be deprived of information that is critical to the performance of their roles. See N.J.S.A. 19:7-5. Challengers typically review public voter information during the twenty-one days prior to an election so that, on election day, they are able to appropriately challenge individuals who may not live in the district when they appear at the polling place. Without advance registration, this information would not be available to the challengers.

In addition, plaintiffs' proposed scheme would prevent election officials from adequately planning for each election because they would not be able to determine, in advance, how many voting machines and provisional ballots should be allocated to each polling place, and how many election workers should be assigned. N.J.S.A. 19:14-34. If a large number of unregistered citizens unexpectedly appeared at a polling place seeking to vote, the officials at the polling place could easily be overwhelmed, causing the very type of disorder the advance registration requirement is designed to prevent.

In the three weeks leading up to an election, election officials also perform a number of other important tasks designed

to ensure that the election is conducted in an orderly manner. Among other things, these officials review and process all voter registration applications, N.J.S.A. 19:31-6.5; prepare polling records for each election district not later than ten days before an election, N.J.S.A. 19:31-3.3; update information in the SVRS, N.J.S.A. 19:31-32; and prepare signature comparison, duplicate registration, and voting forms for each election district in the State. N.J.S.A. 19:31A-7. Without advance registration, which provides election officials with information concerning all of the voters who could be expected to appear at a polling place on election day, these tasks could not be performed.

Defendants also demonstrated that advance registration permits voters to receive sample ballots before the election, which provides them with information about the election and enhances their ability to vote. N.J.S.A. 19:14-21. Voters who did not register in advance would not receive sample ballots. As a result, they would not know "the street address or location of the polling place in the election district, [or] the hours between which the polls shall be open[.]" N.J.S.A. 19:14-22. They would also not receive instructions prior to election day on how to operate the voting machine, the names of the candidates, and the text of any ballot questions.

27                                                        A-4318-14T2

For all of these reasons, we conclude that defendants proved that the State's important interests in preventing voter fraud, ensuring public confidence in the integrity of the electoral process, and enabling voters to cast their ballots in an orderly fashion, are advanced by the registration requirement of N.J.S.A. 19:31-6.3(b). Because these compelling interests far outweigh the minimal burden placed upon plaintiffs by the statute, the twenty-one-day advance registration requirement does not unconstitutionally burden plaintiffs' right to vote. See Burdick, supra, 504 U.S. at 433-434, 112 S. Ct. at 2063, 119 L. Ed. 2d at 253-54.

## III.

Finally, plaintiffs argue that election day registration systems have been adopted in other states, and that New Jersey should do the same.[9] However, the issue presented in this case is

---

[9] According to the National Conference of State Legislatures, the following states and the District of Columbia have some form of election day registration: California, Colorado, Connecticut, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Minnesota, Montana, New Hampshire, Utah, Vermont, Wisconsin, and Wyoming. Same Day Voter Registration, NAT'L CONFERENCE OF STATE LEGISLATURES, (Apr. 26, 2016), http://www.ncsl.org/research/elections-and-campaigns/same-day-registration.aspx; see Cal. Elec. Code § 2170; Col. Rev. Stat. § 1-2-217.7; D.C. Code § 1-1001.07(g)(5); H.B. 2590, 27th Leg. (Haw. 2014); Idaho Code Ann. § 34-408A; 10 Ill. Comp. Stat. Ann. 5/4-50, 5/5-50, 5/6-50; Iowa Code § 48A.7A; Me. Rev. Stat. Ann. tit. 21-A, § 122(4); Md. Code Ann., Elec. Law § 3-305 (2016) (allowing for same-day registration during an early voting period); Minn. Stat. § 201.061 (Subd. 3); Mont. Code Ann.
(continued)

whether N.J.S.A. 19:31-6.3(b) is constitutional, not whether an alternate form of registration might be a better policy choice.

We note that, in July 2005, when the Legislature enacted N.J.S.A. 19:31-31, which ordered the implementation of the SVRS beginning in January 2006, it also amended N.J.S.A. 19:31-6.3(b) to reduce the advance registration requirement from twenty-nine to twenty-one days starting in January 2006. See L. 2005, c. 145, § 1 (establishing the SVRS) and L. 2005, c. 139, § 10 (reducing the advance registration requirement). Contemporaneous enactments of the Legislature are to be read consistently and harmoniously whenever possible. Boyle v. Riti, 175 N.J. Super. 158, 165 (App. Div. 1980). It is therefore appropriate to assume that, when the Legislature created the SVRS, it made the policy choice, based upon its review of the capabilities of the proposed system, that advance registration was still required, but that the period could be reduced by eight days.

We defer to the Legislature's policy decision in this area, which has always been the subject of reasonable regulations designed to protect the integrity of the electoral process. See

(continued)
§ 13-2-304(1)(a); N.H. Rev. Stat. Ann. § 654:7-a; Utah Code Ann. § 20A-4-108; Vt. Stat. Ann. tit. 17, § 2144; Wisc. Stat. § 6.55; Wyo. Stat. Ann. § 22-3-104.

A-4318-14T2

Gangemi, supra, 44 N.J. 166 at 172-73.  As the Supreme Court has observed:

> Judging whether a statute is effective is a matter for policy makers.  We do not pass judgment on the wisdom of a law or render an opinion on whether it represents sound social policy.  That is the prerogative of our elected representatives.  We must confine our review to the constitutionality of the statute.
>
> [Caviglia v. Royal Tours of Am., 178 N.J. 460, 476 (2004) (citations omitted).]

Having determined that N.J.S.A. 19:31-6.3(b) passes constitutional muster, our task is complete.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

_____

**OSTRER, J.A.D., concurring**

For the reasons cogently stated by Judge Haas, I agree that Burdick v. Takushi, 504 U.S. 428, 433-34, 112 S. Ct. 2059, 2063, 119 L. Ed. 2d 245, 253-54 (1992), provides the standard by which we should judge the twenty-one-day advance registration requirement. Supra at __ (slip op. at 10-18). I also agree that the advance registration requirement imposes "no more than a minimal burden" upon plaintiffs' right to vote. Supra at __ (slip op. at 18-20).

But I do not believe that, in order to hold that this requirement is constitutional, we must adopt as our own the conclusions that advance registration preserves public confidence in the electoral process and is essential to confirm voters' addresses, or that "weeks would pass" before election results could be reported if election day registration (EDR) were adopted. Supra at __ (slip op. at 23-28). We need not agree with the Legislature's policy choices in order to sustain them. Given the minimal burden on the right to vote, it is sufficient for us to conclude that there are reasonable, albeit debatable, grounds for retaining an advance registration system. See Burdick, supra, 504 U.S. at 440, 112 S. Ct. at 2067, 119 L. Ed. 2d at 257.

It is for the Legislature to decide whether EDR would be beneficial, and to design and fund the system. If the Legislature were to choose that path, it would follow at least sixteen other states. <u>Supra</u> at ___ n.9 (slip op. at 28 n.9). Those states evidently have concluded that EDR, rather than undermining public confidence in elections, promotes it, by increasing voter participation and assuring that election results represent the will of a more inclusive electorate. The amicus also compellingly describes the measures some of these states have taken to address the practical difficulties of accommodating unregistered voters on election day while assuring that only eligible voters cast ballots. The Legislature may also opt for other ways to expand participation, such as automatic registration. <u>See e.g.</u> <u>Or. Rev. Stat.</u> § 247.017 (2016).[1] Our role is not to decide which is the best system, as that is left to the Legislature's discretion. <u>Gangemi v. Berry</u>, 25 <u>N.J.</u> 1, 12 (1957).

We should be mindful of the history of the relevant provisions of the 1844 and 1947 Constitutions. The 1844 Constitution, like our current Constitution, was silent on the subject of registration. <u>N.J. Const. of 1844</u> art. II, § 1; <u>N.J.</u>

---

[1] Last year the New Jersey Legislature passed Assembly Bill 4613 authorizing automatic voter registration, but the bill was vetoed by the Governor.

Const. art. II, § 1, ¶ 3(a). However, debate at the 1844 Convention reflected an understanding that registration laws enabled election officials to not only confirm voters' identities, but also preserve order at the polls. Proceedings of the New Jersey Constitutional Convention of 1844 at 87 (1942). By the time of the 1947 Convention, the Legislature's power to adopt registration laws under the 1844 Constitution was firmly established. See In re Freeholders of Hudson Cty., 105 N.J.L. 57 (Sup. Ct. 1928) (en banc), motion for appeal denied, 106 N.J.L. 62 (E. & A. 1928). The delegates to the 1947 Convention were urged not to expressly grant authority to enact voter registration laws because doing so would unduly restrict the Legislature's flexibility and "freedom of action." See 2 Proceedings of the New Jersey Constitutional Convention of 1947 at 1374-76. In light of this history, the Legislature has considerable discretion in fashioning a system of registration to achieve its policy goals, so long as the system does not significantly burden voters.

I also agree with the majority that advance registration does not impose an unconstitutional burden on the rights of individuals who become naturalized citizens, or who are released from parole or probationary supervision, less than twenty-one days before an election. However, I reach this conclusion for a

different reason. Our election laws already allow citizens to register in advance as long as they will be eligible to vote on election day, even if they are not eligible to vote at the time that they register. See N.J.S.A. 19:4-1 ("A person who will have on the day of the next general election the qualifications to entitle him to vote shall have the right to be registered for and vote at such general election . . . ."). I see no reason why a soon-to-be naturalized citizen, or a soon-to-be released offender, may not register in anticipation of his or her scheduled naturalization ceremony or release from supervision.

In sum, "[w]hat the Constitution does not bar, either expressly or by clear implication, is left to the Legislature to address." State v. Buckner, 223 N.J. 1, 5 (2015). Under our Constitution, it is the job of the Legislature to determine the mode and manner of voting, and our role is limited to reviewing the constitutionality of legislative policy judgments enacted into law. See Gangemi, supra, 25 N.J. at 12. Because I would find twenty-one-day advance registration constitutional without adopting the policy judgments that support it, I respectfully concur in the judgment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION