F. Perry RAY, Appellant (Petitioner Below),

v.

STATE ELECTION BOARD, Appellee (Respondent Below).

No. 2–880A278.

Court of Appeals of Indiana, Fourth District.

June 30, 1981.

Rehearing Denied Sept. 8, 1981.

See 425 N.E.2d 240.

Charles Thomas Gleason, Gleason, Hay & Gleason, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Robert F. Colker, Asst. Atty. Gen., Indianapolis, for appellee.

CHIPMAN, Judge.

In 1980 F. Perry Ray attempted to have his name placed on the ballots of both the Republican and Democratic parties as a candidate for Congress. The State Election Board (Board) denied Ray a place on either ballot and he appealed its decision to the Marion Superior Court where it was affirmed.

We reverse.

On appeal, we are presented the following questions:

1. Is this case moot;

2. Was the trial court correct in finding Ind.Code 3–1–9–3 defines membership in a political party; and

3. Is Ind.Code 3–1–9–6 unconstitutionally vague and overbroad?[1]

### FACTS

Ray mailed two separate Declarations of Candidacy to the Secretary of State's office in which he requested to be placed on the May 1980 primary ballots of the Democratic and Republican parties for United States Representative from the 11th Congressional District. In one declaration, he stated he was a member of the Democratic party and in the other, a member of the Republican party. Not knowing how to handle this dual filing, the Secretary of State's office presented the issue to the Board which set it for a hearing. At the hearing Ray affirmed his desire to appear on both ballots if he could do so legally. When asked if he had a party preference, he said, "I have. I don't want to tell you." Boardmember Thomas Milligan thought Ray's failure to disclose a party preference made him ineligible for either ballot and made the motion to disqualify both declarations, since he believed cross-filings were not allowed under IC 3–1–9–6.

"3–1–9–6 Separate ticket for each party—Form of ballot.—Each party subject to the provisions of this title [3–1–1–1—3–1–3–2] and entitled to participate in any primary shall have a separate ticket, which shall be either in printed ballot form, prepared and printed as provided in IC 1971, 3–1–9–2, or on separate voting machine labels. The name of each candidate shall be printed on the official ballot under a designation of the office for which he is a candidate. *The name of no candidate belonging to any other party shall be printed or written thereon.* Such ballot shall contain the names of all candidates for the respective offices for whom nomination papers have been filed. At such primary election, such elector may vote for as many candidates for each office designated as there shall be persons to be elected to that office at that ensuing election...." [emphasis added]

The motion was seconded and unanimously adopted.

Ray appealed the Board's decision to the Marion Superior Court arguing the Board arbitrarily applied IC 3–1–9–6 to his case since it failed to offer any definition or interpretation of the phrase "belonging to any other party," that the Board's application of this section to him violated his constitutional right to freedom of association, and that this section was unconstitutionally vague. After reviewing the transcript and these other issues of general public interest; accordingly, we will not address them. (See the discussion in Section I, infra.)

---

1. Ray has raised several other issues that are clearly moot and are not "necessarily capable of repetition yet likely to evade review" nor are

exhibits from the Board's hearing the court affirmed the Board's decision. In its ruling, the court made the following findings:

" . . .

The Court finds membership in a political party is defined in IC 3–1–9–3, as a person who, at the last preceding general election voted for a majority of the regularly nominated candidates of the party holding such election or if he did not vote at the last preceding election, intends to vote at the next general election for a majority of the regularly nominated candidates of the party holding such election. The statute provides for affidavits in the event the right to vote for a specific party is challenged.

The Court further finds that under IC 3–1–9–6, the name of each [sic] shall be printed on the official ballot under a designation of the office for which he is a candidate. That the name of no candidate belonging to any other party shall be printed or written thereon.

The Court further finds that the action of the State Election Board was not arbitrary, capricious, or an abuse of discription [sic] and was in accordance to law. The Court further finds that the action of the Election Board was not contrary to constitutional right, power, privilege or immunity.

The Court further finds that the action of the Election Board was not in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

The Court further finds that the State Election Board observed procedure required by law and its decision was supported by substantial evidence."

The Court entered judgment against Ray and stated "petitioner is not entitled to have his name placed on the official ballot of either the Republican or Democratic party in the primary election." From this judgment Ray now appeals.

## I. MOOTNESS

■ Time has obviously made this case moot. The 1980 primary has been concluded and no decision we make today can turn the clock back. Nonetheless, due to the timing involved in our state election laws, we find several issues raised by Ray "capable of repetition, yet evading review," *Rosario v. Rockefeller*, (1973) 410 U.S. 752, 757 footnote 5, 93 S.Ct. 1245, 1249, 36 L.Ed.2d 1, and of general public interest[2] and we will therefore address these issues.

## II. MEMBERSHIP IN A POLITICAL PARTY

Decisions of the Board are reviewable in accordance with the provisions of the Administrative Adjudication Act (Act), Ind. Code 4–22–1–1 et seq. Section 10 of the Act requires the Board to make informal findings of fact[3] and section 14 provides for judicial review by a trial court.[4] The scope

2. See *Indiana High School Athletic Association v. Raike*, (1975) 164 Ind.App. 169, 329 N.E.2d 66; *Dittmer v. City of Indianapolis*, (1968) 143 Ind.App. 621, 242 N.E.2d 106.

3. 4–22–1–10 Finding of facts.—All issues of fact shall be considered and determined upon the record required to be made in conformity with this act [4–22–1–1—4–22–1–30], except as herein otherwise provided as to newly discovered evidence. Said agency shall make an informal finding of facts which shall encompass the relevant facts shown by the evidence. Said finding of facts may be made by direct statement or by reference to the particular charges made in the complaint before such agency. A reference to the particular charges in the complaint shall be sufficient as a finding of facts.

4. 4–22–1–14 Judicial review—Courts—Procedure.—Any party or person aggrieved by any

order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this act [4–22–1–1—4–22–1–30]. Such review may be had by filing with the circuit or superior court of the county in which such person resides, or in any county in which such order or determination is to be carried out or enforced, a verified petition setting out such order, decision or determination so made by said agency, and alleging specifically wherein said order, decision or determination is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

of judicial review is limited by Ind.Code 4–22–1–18:

"4–22–1–18 Judicial review—Procedure.—On such judicial review such court shall not try or determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court pursuant to this act [4–22–1–1—4–22–1–30].

On such judicial review, if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.

If such court finds such finding, decision or determination of such agency is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

Said court in affirming or setting aside the decision or determination of the agency shall enter its written findings of facts, which may be informal but which shall encompass the relevant facts shown by the record, and enter of record its written decision and order or judgment."

The record before us does not contain an informal findings of fact by the Board, it does not appear the findings were ever made, and neither the parties nor the trial court judge have commented on this omission. However, we do have the entire transcript of the Board's hearing and decision of this case, and despite the Board's failure to comply with IC 4–22–1–10 we will nonetheless decide this case now rather than remand it for an entering of findings of fact due to Ray's failure to raise this omission, the lack of conflict in the evidence presented at the hearing, the moot stance of this case, and due to the fact that the primary issues raised here concern questions of law, not of fact.

█ In its Findings of Fact and Judgment (set out above) affirming the Board's decision, the trial court defined membership in a political party by paraphrasing IC 3–1–9–3.[5] Then it set out the provision of IC

---

(4) Without observance of procedure required by law; or
(5) Unsupported by substantial evidence.

.     .     .     .     .

5. 3–1–9–3 [29–3603]. Qualifications of voters.—Each qualified voter of the precinct who, at the last preceding general election, voted for a majority of the regularly nominated candidates of the party holding such election, or if he did not vote at the last preceding general election, intends to vote at the next general election for a majority of the regularly nominated candidates of the party holding such election, shall be entitled to vote at such election: Provided, That such elector was registered as a voter at such previous general election or has registered subsequently thereto. It shall be the duty of the county election board to furnish to the inspector of elections in each of such precincts, for use on the day of holding the primary, the last regularly prepared registration book. If the name of such person offering to vote at such primary shall be found on such registration book, it is sufficient evidence of his right to vote, unless he is challenged as hereinafter provided for. Any person who will be a qualified elector at the election for which such primary is being held, whose name does not appear on such book of registration, shall be entitled to vote if he shall procure a certificate of error as provided in 3–1–7–7 of this article, showing that he is a registered voter of such precinct. Any qualified legal voter in such precinct may challenge any voter or person who shall offer to vote at such election, and, when so challenged, such person shall not be entitled to vote unless he shall be duly registered and make an affidavit that he is a qualified legal voter of the precinct, that at the last preceding general election he affiliated with the party for whose candidate he proposes to vote in such primary and that he voted for a majority of the regular nominees of such party, and that he intends to support and vote for the regular nominees of such party at the coming election, or, if he did not vote at the last preceding general election,

3-1-9-6 "that the name of no candidate belonging to any other party shall be printed or written thereon." Lastly the court found the Board did not violate any of the proscriptions contained in IC 4-22-1-18. The trial court erred in applying the law in this manner.

Neither the court nor the Board had any evidence before it concerning which party Ray had affiliated with[6] in the 1976 general election, or if he had not voted in the 1976 general election, which party he intended to affiliate with in the 1980 general election. Under IC 3-1-9-3, the court needed this information in order to decide if Ray belonged to the Democratic or Republican party. Without this information, the court could not and did not make any specific findings as to Ray's party membership. Despite this lack of findings, the court apparently found Ray had violated the cross-filing prohibition of IC 3-1-9-6. Without having found Ray belonged to a specific party, the court could not have found Ray belonged to "any other party" in addition to the party on whose ballot he was attempting to have his name placed as a candidate. At the minimum, it appears Ray should have been allowed a position on at least one of the primary ballots since he filed a declaration of candidacy for both parties. At most he could have only "belonged" to one party under the IC 3-1-9-3 definition because Ray could not have affiliated with, i.e. voted for a majority of the nominees of, more than one party.

Additionally, we do not believe IC 3-1-9-3 was intended to be used as a definition of party membership. As enacted in Acts 1945, ch. 208, § 85, IC 3-1-9-3 was entitled "Qualifications of Voters," and it sets out eligibility requirements for primary voters. Neither IC 3-1-9-3 nor IC 3-1-9-6 provides a potential candidate with any notice that his "party membership" will be determined by the criteria listed in IC 3-1-9-3. If that section was also intended to define "party membership" it could have easily been so worded.

In this case Ray apparently considers himself to be a "member" of both the Democratic and Republican parties. We can not say as a matter of law that the two parties are mutually exclusive, that a person may not be a member of both parties. Therefore, Ray could conceivably be a "member" of both the Democratic and Republican parties and yet still be legally qualified under IC 3-1-9-6 to vote in the primary for the party he affiliated with at the last preceding general election.

### III. THE CONSTITUTIONALITY OF IC 3-1-9-6

Ray contends the State of Indiana has violated the 14th Amendment through its enactment and enforcement of IC 3-1-9-6 arguing the statute is unconstitutionally vague[7] and its overbroad language infringes upon his fundamental 1st Amendment right of freedom of association. We agree.

intends to vote at the next general election for a majority of the regularly nominated candidates of the party holding such election: Provided, That any qualified legal voter who was under eighteen [18] years of age at the last preceding election, and who will have attained the age of eighteen [18] years on the date of the ensuing election or any voter who will be otherwise qualified to vote at the ensuing election, shall be entitled to register as now provided in this article [3-1-1-1—3-1-32-67] and vote at the primary of the party with which he intends to affiliate, and whose candidates he intends to vote for at the approaching election, and whenever any such person last named is challenged, it shall be sufficient if being duly shown registered, he shall make affidavit that he will be a qualified voter of the precinct at the next gen-

eral election, and that he intends to support and vote for the regular nominees of the party for whose candidate he proposes to vote for in such primary: and Provided, That no challenge on the ground of party affiliation can be made by anyone except a member of the party for whose candidates the voter is offering to vote at such primary.

6. By "affiliated with" we mean voted for a majority of the regular nominees of that party.

7. In his Petitioner-Appellant's Brief, page 27, Ray argues, "The Election Board's decision places on F. Perry Ray, a candidate for primary election, the burden of establishing that he does not belong to any other party, without defining what 'belonging to any other party' means."

Apparently the Board did not consider these challenges important enough to address since it does not respond to nor acknowledge them in its Respondent-Appellee's brief and it has failed to offer any explanation for the omission.

Insofar as these constitutional questions are concerned the Board has unfortunately, in effect, failed to file a brief. If it had any counter arguments to Ray's contentions it would have been helpful if they were presented to our Court on appeal. Hopefully in the future briefs from the State agencies will answer all arguments legitimately raised by appellants.

By enacting this statute it would appear the legislature was attempting to either prevent candidates from cross-filing, as Ray has attempted to do, or to prevent a Democrat from having his name appear solely on the Republican primary ballot or vice versa. Ray argues the 1st Amendment guarantees his fundamental right of freedom of association and that by preventing him from being on both parties' ballots the State has infringed upon this fundamental right. Citing *State ex rel. Handley v. Superior Court of Marion County*, (1958) 238 Ind. 421, 151 N.E.2d 508, he further argues the

> "qualifications for membership in the house of representatives ... are those provided in Article 1, § 2 [8] ... of the federal Constitution. These qualifications are paramount and exclusive. State constitutions and laws can neither add to, nor take away from, [sic] them, and in case of a conflict the provisions of the federal Constitution prevail."

*Id.* at 513. Additionally Ray cites *Communist Party of Indiana v. Whitcomb*, (1973) 414 U.S. 441, 94 S.Ct. 656, 38 L.Ed.2d 635 which held that

> " 'administration of the electoral process is a matter that the Constitution largely entrusts to the States. But, in exercising their powers of supervision over elections and in setting qualifications for voters, the States may not infringe upon basic

constitutional protections.' *Kusper v. Pontikes*, 414 U.S. 51, at 57, 94 S.Ct. 303, at 307, 38 L.Ed.2d 260 (footnote omitted). At stake are appellants' First and Fourteenth Amendment rights to associate with others for the common advancement of political beliefs and ideas. 'The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom.' *Ibid.*"

*Id.* at 449, 94 S.Ct. at 662. We agree with Ray that the 1st and 14th Amendments protect his right to freedom of association but to the extent that he argues no restrictions may be constitutionally placed on that right, we disagree.

"There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments." (citations omitted) *Kusper v. Pontikes*, (1973) 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260. "[T]he right of individuals to associate for the advancement of political beliefs ... rank[s] among our most precious freedoms." *Williams v. Rhodes*, (1968) 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24. But in *Storer v. Brown*, (1974) 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714, the Supreme Court upheld a California statutory scheme which prohibited cross-filings and limited other filing options. In doing so, the Court relied on compelling state interests recognized in *Williams v. Rhodes, supra*, and in *Rosario v. Rockefeller*, (1973) 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1. In these cases the court found States have a compelling interest in encouraging compromise and political stability, ensuring the election winner represents a majority of the community, in regulating the number of candidates to provide the electorate with an understandable ballot, and in protecting the integrity of the primary election process by preventing party raiding, "whereby voters in sympathy with one party designate themselves as vot-

---

**8.** § 2 cl. 2 "No person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

ers of another party so as to influence or determine the results of the other party's primary." *Id.*, at 760, 93 S.Ct. at 1251. The *Storer* opinion points out that Article 1, § 4, clause 1 of our Constitution authorizes the States to prescribe "[t]he Times, Places, and Manner of holding Elections ... for Representatives." In deciding that substantial state regulation of the voting process is not only constitutional but also necessary the Court said,

> "... as a practical manner, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. In any event, the States have evolved comprehensive, and in many respects complex, election codes regulating in m∩st substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates."

*Storer v. Brown, supra,* 415 U.S. at 730, 94 S.Ct. at 1279.

In *Storer* the Court upheld the constitutionality of § 6830(d) of the California Elections code. This subsection required a candidate, desiring a place on the general election ballot as an independent, to file a nomination paper containing "a statement that the candidate is not, and was not at any time during the one year preceding the immediately preceding primary election at which a candidate was nominated for the office mentioned in the nomination paper, registered as affiliated with a political party ...." Candidates seeking to run as a member of a political party are also subject to durational party affiliation requirement.

Therefore under California law, a candidate could not cross-file or be on a primary ballot of a party to which he did not belong. The decisive difference between California's constitutional scheme and Indiana's unconstitutional scheme is that § 311 (Supp. 1974)[9] of the California Election Code provides a definite statutory means of determining party membership. "At the time of registering and of transferring registration, each elector may declare the name of the political party with which he intends to affiliate at the ensuing primary election. The name of that political party shall be stated in the affidavit of registration and the index...."

Indiana's election laws do not contain a similar provision for recording or determining party membership at the time of registration, and this omission forms the basis of Ray's contentions of vagueness and overbreadth.[10]

### A. VAGUENESS

The language "belonging to any other party" contained in IC 3–1–9–6 suffers from what one writer terms the vagueness of overbroad statutes. "[W]henever an overbroad law covering first amendment activities and formless standards of first amendment privilege are conjoined, the result is an operative, injurious legal reality suffering due process vagueness." The *First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 871 (1969). These two constitutional infirmities, vagueness and overbreadth, are often confused and used interchangeably since they frequently overlap. For the sake of clarity, we will attempt to deal with these two measures separately when possible.

**9.** This section has since been amended. § 501 now contains the language formerly contained in § 311.

**10.** Under Ind.Code 3–1–9–10, at the primary election, "[a]ny person desiring to vote shall give his name and political party to the clerks, and shall write in the poll list his name and the name of his party ...." This provision differs from § 311 in that a California voter's party membership is definitely determined by his § 311 registration whereas in Indiana, the voter's statement of his party membership, at the primary polling place, is subject to challenge under IC 3–1–9–3 based on his past voting. Therefore, under Indiana law, IC 3–1–9–3 ultimately determines the party in which the voter is allowed to vote, and for the reasons already stated and those stated in section III A of this opinion, we do not believe IC 3–1–9–3 defines party membership.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [Boards,] policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." [FN. 7 *Cramp v. Board of Public Instruction*, 368 U.S. 278 at 287, 82 S.Ct. 275 at 281, 7 L.Ed.2d 285] Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked." [FN 8 *Baggett v. Bullitt, supra*, 377 U.S. 360 at 372, 84 S.Ct. 1316 at 1323, 12 L.Ed.2d 377 quoting *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460....] [Other footnotes omitted.]

*Grayned v. City of Rockford*, (1972) 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222. Although *Grayned* dealt with a criminal ordinance, the language and approach used by the Court in *Keyishian v. Board of Regents of the University of the State of New York*, (1967) 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629, clearly shows the "void for vagueness doctrine" also applies to statutes like the one before us which do not impose criminal sanctions.

Since neither party membership nor "belonging to" are specifically defined in our election statutes we have attempted in vain to infer a definition of these terms, within the bounds of fair notice, from the statutes. As explained above, the trial court held party membership, "belonging to," was defined by the standards set forth for determining voter qualifications in IC 3–1–9–3. (See footnote 5) We do not believe this Section, by its title and wording, provides fair notice to the citizens of Indiana that party membership is also determined by this section. We also question the constitutionality of IC 3–1–9–3. If a person voted for a majority of the candidates of party A in the 1980 general election, and then, in December 1980, decided to switch allegiance to party B and contributed both time and money to party B from December 1980 on, under IC 3–1–9–3, the voter would still be ineligible to vote in party B's next primary in May 1982. If the voter then voted for a majority of B's nominees in November 1982, he or she would finally be eligible to vote in B's primary in May, 1983, some two and one-half years after switching party allegiance. Under *Kusper v. Pontickes*, (1973) 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260, we believe this thirty month waiting period may constitute an unconstitutional restriction on the voter's right to freedom of association.

Likewise we do not believe the legislature intended to conclude that a candidate "belonged to" the party the candidate listed in his Declaration of Candidacy filed pursuant to IC 3–1–9–5 [11] since under that interpretation, an honest candidate could conceivably "belong to" party A by his statement in his Declaration of Candidacy but be unable to vote for himself in the primary, if challenged under IC 3–1–9–3, because he had affiliated with party B in the last general election and was therefore only qualified to vote for candidates of party B in the primary. This is an illogical result and it cannot be assumed the legislature expects its enactments to be applied in an absurd

11. IC 3–1–9–5 ... I ... do hereby certify that ... I am a member of the _____ party; ....

manner. *Pryor v. State*, (1973) 260 Ind. 408, 296 N.E.2d 125.

The legislature's failure to define "belonging to" offends several important values. It may trap the innocent potential candidate by not providing fair warning of what may be sufficient to keep him or her off a primary ballot. It may inhibit the exercise of fundamental 1st Amendment freedoms and it accounts for the arbitrary treatment Ray has received in this case.

Having received no guidance from the legislature as to the meaning of "belonging to" or "member of" we refer to the dictionary to find the normal usage of these phrases. Webster's Third New International Dictionary (Unabridged ed. 1976) defines "belong to" at p. 201 as "to be a member of a club or similar association" and it defines "member" at p. 1408 as "one of the individuals composing a society, community, association, or other group as . . . a branch or affiliate of a political association." The vagueness problem we are faced with when dealing with these phrases is added to in this case by the unique character of political party membership in Indiana since the parties do not conduct formal initiations, or expulsions for failing to pay dues or adhere to the party's rules, nor do the parties provide any evidence of membership such as a membership card. In deciding this case we ourselves have had a great deal of difficulty arriving at a workable definition of "belonging to a political party" in light of today's voter who may contribute financially or in kind to candidates of different parties and who splits his votes among several parties rather than voting a straight party ticket. Herein lies the heart of IC 3–1–9–6's overbreadth problem.

**12.** It is only due to this reasoning that Ray is' allowed to raise the issues he has raised. Under *Storer v. Brown, supra*, it is clear that a State may prevent a candidate from cross-filing like Ray has done here, but the courts have been willing to allow those engaged in unprivileged conduct to raise an overbreadth objection to statutes covering their unprivileged conduct. See *Young v. American Mini Theatres Inc.*, (1976) 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d

## B. OVERBREADTH

"[S]tandards of permissible statutory vagueness are strict in the area of free expression. . . . Furthermore, the instant [statute] may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar.[12] It makes no difference that the instant case was not a criminal prosecution and not based on a refusal to comply with a licensing requirement. The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute[13] susceptible of sweeping and improper application. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." (citations omitted)

*N.A.A.C.P. v. Button*, (1963) 371 U.S. 415, 532–33, 83 S.Ct. 328, 338–39, 9 L.Ed.2d 405. In *Williams v. Rhodes, supra*, the Supreme Court recognized freedom of association as a fundamental right. If a potential candidate is unable to determine what the Board may equate with "belonging to another par-

310; *Coates v. City of Cincinnati*, (1971) 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214; *Freedman v. State of Maryland*, (1965) 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

**13.** Here we believe the Court is using the term penal rather than criminal in the sense that the statute may prohibit an act, e. g. cross-filing, without imposing a criminal sanction for its violation.

ty," this individual may have his freedom of association infringed, chilled by a fear of being found ineligible to be on one party's primary ballot due to the exercise of his freedom of association with another party. "The uncertainty as to the utterances and acts proscribed increases that caution in 'those who believe the written law means what it says.' *Baggett v. Bullit, supra,* 377 U.S. at 374, 84 S.Ct. at 1324." *Keyishian v. Board of Regents of University of the State of New York, supra,* 385 U.S. at 601, 87 S.Ct. at 683. "When one must guess what conduct or utterance may lose him his position, one necessarily will 'steer far wider of the unlawful zone ...' *Speiser v. Randall,* 357 U.S. 513 ... the danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools ..." *Id.* at 604, 87 S.Ct. at 684. Indiana has failed to use those sensitive tools in drafting IC 3–1–9–6.

"Restrictions on access to the ballot burden two distinct and fundamental rights, "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes, supra,* 393 U.S. at 30, 89 S.Ct. at 10. The freedom to associate as a political party ... [is] a right we have recognized as fundamental, see *id.,* at 30–31, 89 S.Ct. at 10 ...

When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest.... [This] Court has previously acknowledged that States have a legitimate interest in regulating the number of candidates on the ballot ...

However, our previous opinions have also emphasized that 'even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty,' *Kusper v. Pontikes,* 414 U.S. 51, 59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973) and we have required that States adopt the least drastic means to achieve their ends. This requirement is particularly important where restrictions on access to the ballot are involved." (citations omitted)

*Illinois State Board of Elections v. Socialist Workers Party,* (1979) 440 U.S. 173, 184–185, 99 S.Ct. 983, 990–91, 59 L.Ed.2d 230.

As we have noted, the State may constitutionally prevent candidates from cross-filing petitions for candidacy. But under the interpretation we have been forced to give IC 3–1–9–6, the State has gone far beyond that permissible goal. The statute prohibits a candidate from "belonging to," or associating with, more than one political party. This is not the least restrictive means by which the State can accomplish its desired objective.

The judgment of the trial court is reversed.

YOUNG, P. J., and MILLER, J., concur.