**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3542-21
A-3543-21

IN RE TOM MALINOWSKI,
PETITION FOR NOMINATION
FOR GENERAL ELECTION,
NOVEMBER 8, 2022, FOR
UNITED STATES HOUSE OF
REPRESENTATIVES NEW
JERSEY CONGRESSIONAL
DISTRICT 7.

_____

APPROVED FOR PUBLICATION

February 26, 2025

APPELLATE DIVISION

Argued December 10, 2024 – Decided February 26, 2025

Before Judges Gilson, Firko, and Augostini.

On appeal from the Department of State, New Jersey Division of Elections.[1]

Beau C. Tremitiere (United to Protect Democracy) of the California and Colorado bars, admitted pro hac vice, argued the cause for appellants (Weissman & Mintz, LLC, Yael Bromberg (Bromberg Law LLC), Professor Joel Rogers (University of Wisconsin Law School) of the New York bar, admitted pro hac vice, and Professor Nate Ela (University of Cincinnati College of Law) of the Massachusetts bar, admitted pro hac vice, attorneys for appellants Moderate Party and Richard A. Wolfe; Beau C. Tremitiere and Farbod K. Faraji (United to Protect Democracy), attorneys for appellants Michael Tomasco and William Kibler;

---

[1] The initial and amended notices of appeal misidentified the Division of Elections as the Department of Elections.

Flavio L. Komuves, Brett M. Pugach, Steven P. Weissman, Yael Bromberg, Professor Joel Rogers, Professor Nate Ela, Beau C. Tremitiere, and Farbod K. Faraji, of counsel and on the joint briefs).

Tim Sheehan, Deputy Attorney General, argued the cause for respondents New Jersey Secretary of State Tahesha Way and New Jersey Division of Elections (Matthew J. Platkin, Attorney General, attorney; Angela Cai and Sookie Bae-Park, Assistant Attorneys General, of counsel; Tim Sheehan and Steven M. Gleeson, Deputy Attorneys General, on the briefs).

Jason N. Sena argued the cause for intervenor New Jersey Republican State Committee, Inc. (Archer & Greiner, PC, attorneys; Jason N. Sena, on the brief).

Jeanne LoCicero argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, Rutgers Law School, and Rutgers Constitutional Rights Clinic, attorneys; Liza Weisberg, Jeanne LoCicero, Robert F. Williams, and Ronald K. Chen, of counsel and on the brief).

Ryan Chabot (Wilmer Cutler Pickering Hale and Dorr LLP), Matthew Wollin (Wilmer Cutler Pickering Hale and Dorr LLP) of the New York bar, admitted pro hac vice, and Brittany Blueitt Amadi (Wilmer Cutler Pickering Hale and Dorr LLP) of the District of Columbia bar, admitted pro hac vice, attorneys for amici curiae bipartisan former members of Congress Bruce Braley, Richard A. Gephardt, Patrick J. Murphy, John J. Schwarz, and David A. Trott (Ryan Chabot, Matthew Wollin, and Brittany Blueitt Amadi, of counsel and on the brief).

2

Anselmi & Carvelli, LLP, attorneys for amici curiae
Professors Seth Masket, Nolan McCarty, and Hans
Noel (Zachary D. Wellbrock, on the brief).

Pashman Stein Walder Hayden, PC, attorneys for
amicus curiae New Jersey Libertarian Party (CJ Griffin
and Joshua P. Law, on the brief).

Saiber LLC, Jonathan M. Moses (Wachtell, Lipton,
Rosen & Katz), and Michael L. Thomas, Jr. (Wachtell,
Lipton, Rosen & Katz) of the New York bar, admitted
pro hac vice, attorneys for amicus curiae Tabatha Abu
El-Haj (Vincent C. Cirilli, of counsel and on the brief;
Jonathan M. Moses and Michael L. Thomas, Jr., on the
brief).

David J. Fioccola (Morrison & Foerster LLP), and Joel
F. Wacks (Morrison & Foerster LLP) of the California
bar, admitted pro hac vice, Joseph R. Palmore
(Morrison & Foerster LLP) of the New York and
District of Columbia bars, admitted pro hac vice, Alicia
Bannon (The Brennan Center), Douglas Keith (The
Brennan Center) of the New York bar, admitted pro hac
vice, and Lauren Miller (The Brennan Center) of the
Illinois bar, admitted pro hac vice, attorneys for amicus
curiae The Brennan Center (David J. Fioccola, Joel F.
Wacks, Joseph R. Palmore, Alicia Bannon, Douglas
Keith, and Lauren Miller, of counsel and on the brief).

Gibbons PC, Victoria J. Ryan (Kirkland & Ellis LLP),
and Jay P. Lefkowitz (Kirkland & Ellis LLP) of the
New York and District of Columbia bars, admitted pro
hac vice, attorneys for amici curiae Rainey Center, Cato
Institute, and former Governor Christine Todd
Whitman (Anne M. Collart, Victoria J. Ryan, and Jay
P. Lefkowitz, of counsel and on the brief).

A-3542-21

Eric S. Aronson (Stroock & Stroock & Lavan LLP), and Jerry H. Goldfeder (Stroock & Stroock & Lavan LLP) of the New York bar, admitted pro hac vice, attorneys for amici curiae Professors Peter Argersinger, Dale Baum, Corey Brooks, Lisa Disch, Colin Gordon, Ira Katznelson, Michael Kazin, and J. Morgan Kousser (Eric S. Aronson, of counsel and on the brief; Jerry H. Goldfeder, on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

New Jersey, like most states, has statutes that prohibit a candidate for public office from appearing on a ballot more than once. These statutes, which have existed for more than a century, are referred to as anti-fusion laws because they prevent one candidate from being listed as the nominee for multiple parties.

Over twenty-five years ago, the United States Supreme Court held that state anti-fusion laws do not violate the United States Constitution (the Federal Constitution). Timmons v. Twin Cities Area New Party, 520 U.S. 351, 353-54 (1997). Appellants, the Moderate Party and three individual voters, now challenge New Jersey's anti-fusion statutes, arguing that they violate the New Jersey Constitution (the State Constitution).

We hold that the statute at issue—N.J.S.A. 19:13-8—does not violate the State Constitution. We, therefore, affirm the decisions by the New Jersey Secretary of State (the Secretary) to reject the Moderate Party's request to list

4

A-3542-21

Tom Malinowski as its nominee on the November 2022 general election ballot for the United States House of Representatives, 7th Congressional District (the U.S. Representative for the 7th District) because Malinowski had already sought and accepted the Democratic Party's primary nomination for that office.

I.

We summarize the relevant facts from the limited administrative record giving rise to these two consolidated appeals. In doing so, we note that the material facts are not in dispute and the issues presented involve questions of constitutional law.

Prior to June 2022, Tom Malinowski submitted a petition to the Secretary declaring that he would be a candidate in the June 2022 Democratic Party primary for the U.S. Representative for the 7th District. Malinowski won the Democratic Party primary on June 7, 2022.

That same day, the Moderate Party petitioned the Secretary to list Malinowski as its nominee for the U.S. Representative for the 7th District on the November 2022 general election ballot. The Moderate Party's submission included a certification, signed by Malinowski, where he acknowledged that he had previously petitioned to be the Democratic Party's primary nominee and stated that if the Secretary decided he could only accept one nomination, then

5

he wanted to be listed as the nominee of the Democratic Party. The petition also stated that the Moderate Party "reserve[d] the right to challenge any such rejection of [the] petition."

The next day, on June 8, 2022, the Secretary sent Malinowski a letter stating that the law prohibited him from accepting the Moderate Party's direct nomination petition because he had already submitted a petition to be the primary nominee of the Democratic Party for the same office. The Secretary based her denial on N.J.S.A. 19:13-8, which prohibits a candidate from accepting more than one nomination for the same public office. Specifically, that statute states, in relevant part:

> A candidate nominated for an office in a petition shall manifest his [or her] acceptance of such nomination by a written acceptance thereof, signed by his [or her] hand, upon or annexed to such petition, to which shall be annexed the oath of allegiance prescribed in section 41:1-1 of the Revised Statutes duly taken and subscribed by him [or her] before an officer authorized to take oaths in this State, or if the same person be named for the same office in more than one petition, annexed to one of such petitions. Such acceptance shall certify that the candidate is a resident of and a legal voter in the jurisdiction of the office for which the nomination is made. No candidate so named shall sign such acceptance if he [or she] has signed an acceptance for the primary nomination or any other petition of nomination under this chapter for such office.
>
> [N.J.S.A. 19:13-8.]

A-3542-21

On July 8, 2022, the Moderate Party requested that the Secretary reconsider her decision to not list Malinowski on the ballot as its nominee. In connection with its request, the Moderate Party submitted a brief arguing that New Jersey's anti-fusion statutes were unconstitutional under the State Constitution.

On July 19, 2022, the Secretary sent a letter to the Moderate Party denying reconsideration. Again, the Secretary cited to and relied on N.J.S.A. 19:13-8 as the statute requiring the rejection of the Moderate Party's petition to list Tom Malinowski on the ballot as its candidate.

The Moderate Party and three individual voters filed two appeals challenging the Secretary's decisions. We accelerated both appeals. Thereafter, the parties filed a series of procedural motions. The Secretary moved to take the appeals off the accelerated track, and we granted that unopposed request. We also granted the Republican State Committee's motion to intervene and participate in these appeals. Additionally, we granted appellants' request to consolidate the appeals. Finally, we denied the Secretary's motion to dismiss, transfer, or remand this matter. In making that motion, the Secretary had argued that the record needed to be developed. We rejected that position, noting that the issues presented were purely legal.

7

The parties sought and we granted several extensions in time and the right to file overlength briefs. In addition, multiple organizations and individuals sought and were granted the right to file briefs as amici curiae. This court heard oral argument on these consolidated appeals on December 10, 2024.

II.

On appeal, appellants argue that New Jersey's anti-fusion statutes violate four rights guaranteed by the State Constitution: (1) the right to vote; (2) the right to free speech and political association; (3) the right to assemble and make opinions known to representatives; and (4) the right to equal protection under the law. Appellants also contend that if the anti-fusion statutes are found to be unconstitutional, we should declare that the Legislature cannot require the aggregation of cross-nominations. In other words, appellants ask us to declare that the Legislature cannot enact a statute requiring that a candidate, who is nominated by multiple parties, be listed once with all nominating parties written next to the candidate's name.

In response, the Secretary contends that appellants' arguments fail because the Federal Constitution does not prohibit anti-fusion laws, and the protections provided by the State Constitution are equivalent in scope. Alternatively, the Secretary argues that even if the State Constitution affords broader protections

A-3542-21

for the rights asserted by appellants, the relevant anti-fusion laws are still valid under the Anderson-Burdick interest-balancing test. See Timmons, 520 U.S. at 358 (first citing Burdick v. Takushi, 504 U.S. 428, 434 (1992); and then citing Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)).

The New Jersey Republican State Committee, Inc. (the Committee) supports the Secretary's position that the anti-fusion statutes are valid and do not violate the State Constitution. It argues that the ban on fusion voting is an appropriate exercise of the Legislature's right to regulate elections. The Committee also contends that appellants' request for a declaratory ban on aggregation is an improper request for an advisory opinion.

Twenty-three amici have filed briefs in support of appellants' positions. Those amici include five organizations and eighteen individuals, including former elected officials and professors. The amici are the Brennan Center; the Rainey Center; the Cato Institute; the American Civil Liberties Union of New Jersey; the New Jersey Libertarian Party; former Governor Christine Todd Whitman; former members of the House of Representatives: Bruce Braley, Richard Gephardt, Patrick Murphy, John Schwarz, and David Trott; and Professors Tabatha Abu El-Haj, Peter Argersinger, Dale Baum, Corey Brooks, Lisa Disch, Colin Gordon, Ira Katznelson, Michael Kazin, J. Morgan Kousser,

Seth Masket, Nolan McCarty, and Hans Noel.  Collectively, those amici filed eight briefs.

In their briefs, the amici echo many of the arguments made by appellants. Several amici also advance arguments concerning how anti-fusion statutes perpetuate the dominance of the Democratic and Republican parties.  Some amici also contend that anti-fusion laws contribute to the polarization of American politics and threaten American democracy.

## III.

To place the issues in context, we briefly summarize the history of anti-fusions laws.  New Jersey's laws prohibiting fusion ballots have been in place for over a century.  Commentators point out that New Jersey's anti-fusion statutes arose out of a broader effort to reform the electoral system.  See Adam Winkler, Voters' Rights and Parties' Wrongs:  Early Political Party Regulation in the State Courts, 1886-1915, 100 Colum. L. Rev. 873, 876 (2000); James Gray Pope, Fusion, *Timmons v. Twin Cities Area New Party*, and the Future of Third Parties in the United States, 50 Rutgers L. Rev. 473, 484 (1998); Celia Curtis, Comment, Cross-Endorsement by Political Parties:  A "Very Pretty Jungle"?, 29 Pace L. Rev. 765, 770-71 (2009).  With that aim in mind, by 1911, New Jersey enacted a series of reforms that included the use of a single, official ballot to list

the names of all candidates for office, confidential ballots, and voting booths. See L. 1911, c. 183, §§ 53, 61.

For a brief time in the early twentieth century, New Jersey allowed certain fusion ballots. See L. 1911, c. 183, § 54. In that regard, the Legislature directed a "candidate receiving the nomination of more than one political party . . . [to] file with the public official charged with the duty of printing the ballots a notice directing . . . in what order the several nominations shall be added to his name upon the official ballot." Ibid. In 1921, however, the Legislature passed two laws barring candidates for public office from being nominated by a political party, by way of direct petition, when they had already accepted the primary or general election nomination of another political party for the same office. L. 1921, c. 196, §§ 59-60. Those laws are currently codified in N.J.S.A. 19:13-4 and N.J.S.A. 19:13-8.

In 1922, New Jersey enacted a statute which further prohibited fusion voting by allowing a candidate's name to appear only once on a ballot for the same office. L. 1922, c. 242, § 32. That law is currently codified in N.J.S.A. 19:14-2. There is a similar prohibition codified in N.J.S.A. 19:14-9. New Jersey also prohibits a candidate from proceeding by direct nomination petition as an

11

independent in a general election if the candidate has already sought a nomination in a party's primary. N.J.S.A. 19:23-15.

Most states have similar statutes that directly or indirectly restrict or prohibit fusion tickets. See Timmons, 520 U.S. at 357 (recognizing that "in [the twentieth] century, fusion has become the exception, not the rule"). As a result, "multiple party nomination is prohibited today . . . in about forty states and the District of Columbia." Twin Cities Area New Party v. McKenna, 73 F.3d 196, 198 (8th Cir. 1996).

IV.

Appellants seek to invalidate five statutes, which they describe as anti-fusion laws: N.J.S.A. 19:13-4; N.J.S.A. 19:13-8; N.J.S.A. 19:14-2; N.J.S.A. 19:14-9; and N.J.S.A. 19:23-15. As we have already briefly summarized, N.J.S.A. 19:14-2 and N.J.S.A. 19:14-9 prohibit a candidate from appearing more than once on a ballot. N.J.S.A. 19:13-8 and N.J.S.A. 19:23-15 prohibit candidates from accepting more than one nomination petition. Finally, N.J.S.A. 19:13-4 prohibits more than one party or group of petitioners from nominating the same candidate.

In this opinion, we address only N.J.S.A. 19:13-8 because that is the only statute that the Secretary identified in her administrative decisions. It is well-

12

settled that appeals are taken from final administrative decisions.  See R. 2:4-1(b); In re CAFRA Permit No. 87-0959-5 Issued to Gateway Assocs., 152 N.J. 287, 299 (1997).  Accord Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 139-40 (2001).

Moreover, to address statutes not directly at issue would be inconsistent with the well-established principle of judicial restraint.  That principle directs that "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation."  Comm. to Recall Robert Menedez from the Off. of U.S. Senator v. Wells, 204 N.J. 79, 96 (2010) (quoting Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006)).  Accord Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51 (2008) (recognizing "the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'" (quoting Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (internal quotations marks omitted))).

Accordingly, we will not address the constitutionality of all anti-fusion statutes.  Instead, we will limit our analysis to N.J.S.A. 19:13-8.

V.

Appellants contend that N.J.S.A. 19:13-8 violates the State Constitution. They concede, as they must, that the United States Supreme Court has already held that state anti-fusion statutes do not violate the Federal Constitution. See Timmons, 520 U.S. at 353-54.

In Timmons, the New Party sought to nominate a candidate for the upcoming general election who had already declared his candidacy in the Minnesota Democratic–Farmer–Labor Party's primary. Id. at 354. Local election officials refused to accept the New Party's nomination petition due to a state law "prohibit[ing] a candidate from appearing on the ballot as the candidate of more than one party." Ibid. The New Party challenged the Minnesota law in federal court, contending that the law violated its freedom of association under the First and Fourteenth Amendments to the Federal Constitution. Id. at 355.

The United States Supreme Court rejected that challenge. Id. at 356. In evaluating the constitutionality of the statute, the Court applied the Anderson-Burdick interest-balancing test. Id. at 358-59 (first citing Burdick, 504 U.S. at 434; and then citing Anderson, 460 U.S. at 789). The Timmons court recognized that states would have to apply "reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder," and that those

14

regulations would, to some extent, encroach on a party's right of association and expression. Id. at 358.

The Timmons Court then concluded that "the burdens [the Minnesota statute] impose[d] on the party's First and Fourteenth Amendment associational rights—though not trivial—[were] not severe." Id. at 363. In that regard, the Court pointed out that the New Party was "free to try to convince" its preferred candidate to relinquish the Democratic–Farmer–Labor Party's nomination and accept its nomination. Id. at 360. The Court also pointed out that the statute did not "restrict the ability of the New Party and its members to endorse, support, or vote for anyone they like" or "directly limit the party's access to the ballot." Id. at 363.

The Timmons Court also reasoned that the anti-fusion statute applied to all parties and did not regulate a party's "internal affairs and core associational activities." Id. at 360. The Court pointed out that the Minnesota statute did not preclude a minority party from endorsing or aligning itself with another party's candidate. Id. at 361.

In contrast, the Timmons Court reasoned that the anti-fusion statute served Minnesota's legitimate regulatory interests in "avoiding voter confusion and overcrowded ballots, preventing party splintering and disruptions of the two-

15

party system, and being able to clearly identify the election winner." Id. at 364. So, the Timmons Court held that the Minnesota law survived the less stringent Anderson-Burdick interest-balancing test. Id. at 369-70.

The New Jersey Supreme Court has not addressed whether the State Constitution prohibits anti-fusion statutes. Most other states that have considered this issue have held that their constitutions allow anti-fusion laws. See, e.g., Working Fams. Party v. Commonwealth, 209 A.3d 270, 286 (Pa. 2019) (upholding Pennsylvania anti-fusion statute against state constitutional challenge); Swamp v. Kennedy, 950 F.2d 383, 386 (7th Cir. 1991) (rejecting a constitutional challenge to Wisconsin's prohibition on multi-party nominations); Ray v. State Election Bd., 422 N.E.2d 714, 722 (Ind. Ct. App. 1981) (holding that while the election statute at issue was unconstitutionally vague and overbroad, "[Indiana] may constitutionally prevent candidates from cross-filing petitions for candidacy"); State v. Wileman, 143 P. 565, 566-67 (Mont. 1914) (holding that a state anti-fusion statute did not interfere with the right to vote or "the right of naming candidates for public office"); State v. Super. Ct. of King Cnty., 111 P. 233, 237 (Wash. 1910) (finding "no reason or authority for saying that any candidate possesses the constitutional . . . right to have his name appear more than once upon the official ballot"); State ex rel. Fisk v. Porter, 100 N.W.

16

1080, 1081 (N.D. 1904) (similar); State ex rel. Bateman v. Bode, 45 N.E. 195, 196-97 (Ohio 1896) (similar).

VI.

Perhaps the clearest and simplest way to analyze the constitutional issue presented is to consider the plain language of the State Constitution and the proceedings of the 1947 Convention that adopted our current State Constitution.

The State Constitution does not directly address fusion ballots. In other words, there is no provision expressly allowing or prohibiting fusion ballots. The absence of an express authorization of fusion ballots, however, is telling. New Jersey's anti-fusion statutes were in existence when the 1947 Convention took place. The delegates to the 1947 Convention were clearly aware of those statutes because they considered but rejected three proposals that would have allowed fusion ballots. See 2 Proceedings of the New Jersey Constitutional Convention of 1947, 1010; 3 Proceedings of the New Jersey Constitutional Convention of 1947, 614-16, 872, 888.

Proposal No. 25 sought to add a constitutional provision stating:

> The right of any legally qualified group of petitioners or of the voting members of any legally recognized political party to nominate any qualified person for an elective public office shall not be denied or abridged because he is not a member of the party or on account of his nomination by some other party or group.

17

[2 <u>Proceedings of the New Jersey Constitutional Convention of 1947</u>, 1010.]

The New Jersey Committee for Constitutional Review and the New Jersey State Industrial Council, CIO also submitted two identical proposals to "[f]orbid legislation prohibiting a candidate running on more than one party ticket." 3 <u>Proceedings of the New Jersey Constitutional Convention of 1947</u>, 872, 888. All three of those proposals "received careful consideration," but were ultimately not adopted. 2 <u>Proceedings of the New Jersey Constitutional Convention of 1947</u>, 1078; 3 <u>Proceedings of the New Jersey Constitutional Convention of 1947</u>, 872, 888.

In short, both the language of the State Constitution and the proceedings of the 1947 Convention support the interpretation that N.J.S.A. 19:13-8 does not violate the State Constitution.

## VII.

With good reason, some argue that a constitution is not a static document and, given compelling reasons, the interpretation of constitutional provisions can and should change with the passage of time. <u>Trop v. Dulles</u>, 356 U.S. 86, 103 (1958) ("The provisions of the Constitution are not time-worn adages or hollow shibboleths. They are vital, living principles that authorize and limit

governmental powers in our Nation."); State v. Comer, 249 N.J. 359, 383 (2022) ("[t]he interpretive process [concerning the Eighth Amendment] 'often requires refer[ence] to the evolving standards of decency that mark the progress of a maturing society'" (quoting State v. Zuber, 227 N.J. 422, 438 (2017) (internal quotation marks omitted))). We, therefore, do not end our analysis with the 1947 Convention, which was conducted almost eighty years ago. Instead, we consider two additional questions. First, whether New Jersey should depart from federal law in this matter when interpreting its own Constitution. Second, whether any provisions of the State Constitution clearly prohibit N.J.S.A. 19:13-8.

1. Whether New Jersey Should Adopt A Different Interpretation Of Its Constitution Concerning An Anti-Fusion Law.

The New Jersey Supreme Court is the highest court with authority to interpret the State Constitution. Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 359 (2007) (explaining that "[t]he [State] Constitution is, above all, an embodiment of the will of the People, and this Court's responsibility as final expositor is to ascertain and enforce that mandate"). Consequently, in reviewing rights recognized by the State Constitution, the New Jersey Supreme Court sometimes adopts a different interpretation than the United States Supreme Court uses in interpreting similar provisions in the

19

Federal Constitution. State v. McAllister, 184 N.J. 17, 29 (2005) (pointing out that "the Federal and [State] Constitutions both protect citizens from 'unreasonable searches and seizures' . . . [but] [d]espite the[ir] similar language, we have recognized that our Constitution 'affords our citizens greater protection against unreasonable searches and seizures' than its federal counterpart" (quoting State v. Novembrino, 105 N.J. 95, 145 (1987))); State v. Hempele, 120 N.J. 182, 196 (1990) ("In interpreting the [State] Constitution, we look for direction to the United States Supreme Court, . . . [b]ut although that Court may be a polestar that guides us as we navigate the [State] Constitution, we bear ultimate responsibility for the safe passage of our ship.").

When the New Jersey Supreme Court does depart from federal interpretations, however, it does so with good reasons, and it carefully considers when it will apply a different interpretation. See State v. Hunt, 91 N.J. 338, 363-67 (Handler, J., concurring) (offering criteria for identifying when the State Constitution should deviate from interpretations of the Federal Constitution in protecting certain rights). Those criteria include: (1) textual language; (2) legislative history; (3) preexisting state law; (4) structural differences; (5) matters of particular state interest or local concern; (6) state traditions; and (7) public attitudes. Ibid.

A-3542-21

An analysis of the seven <u>Hunt</u> criteria does not justify interpreting the State Constitution differently than the Federal Constitution in this matter. While the textual language of the State Constitution protecting free speech, freedom of association, the right to vote, the right to assemble, and equal protection varies slightly from the Federal Constitution, those differences do not support an interpretation that N.J.S.A. 19:13-8 violates the State Constitution. Similarly, a consideration of New Jersey's legislative history, preexisting state law, structural differences, matters of local concern, state tradition, and public attitudes also do not support a departure from the federal interpretation.

Instead, the history surrounding the adoption of our current State Constitution and the long-standing existence of anti-fusion laws, as previously discussed, supports the view that prohibiting a candidate from accepting more than one party's nomination for the same office is not unconstitutional. In that regard, the New Jersey Supreme Court has recognized that "[w]hen the framers of the [C]onstitution intended that a subject should be placed beyond legislative control[,] they said so." <u>State v. Buckner</u>, 223 N.J. 1, 15 (2015) (quoting <u>State v. De Lorenzo</u>, 81 N.J.L. 613, 621 (E. & A. 1911)) (internal quotation marks omitted). Furthermore, fusion voting is not a matter of local concern, because

21

anti-fusion laws impact residents of the roughly forty states that currently have them in place.

2.    The Rights Protected By The State Constitution.

Even if we independently evaluate appellants' challenges to N.J.S.A. 19:13-8 under the State Constitution, we hold the statute is not unconstitutional. Appellants and amici argue that N.J.S.A. 19:13-8 violates four provisions of the State Constitution. Specifically, they contend that the statute violates the rights to (1) vote; (2) free speech and association; (3) assemble; and (4) equal protection.

The right to vote is set forth in Article II, Section 1, Paragraph 3(a) of the State Constitution:

> Every citizen of the United States, of the age of [eighteen] years, who shall have been a resident of this State and of the county in which he claims his vote [thirty] days, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people . . . .

The right to free speech is protected in Article I, Paragraph 6. That Paragraph states, in relevant part, "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that

22

right.  No law shall be passed to restrain or abridge the liberty of speech or of the press."  N.J. Const. art. I, ¶ 6.

Regarding political association and the right to assemble, Article I, Paragraph 18 of the State Constitution declares that "people have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives."  N.J. Const. art. I, ¶ 18.

Lastly, the right to equal protection under the law is recognized as being guaranteed by Article I, Paragraph 1.  See Lewis v. Harris, 188 N.J. 415, 442 (2006) ("Although our State Constitution nowhere expressly states that every person shall be entitled to the equal protection of the law[], we have construed the expansive language of Article I, Paragraph 1 to embrace that fundamental guarantee.").  That provision states:  "All persons are by nature free and independent, and have certain natural and inalienable rights, among which are those of enjoying and defending life and liberty . . . ."  N.J. Const. art. I, ¶ 1.

It is well-settled "that a legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt."  State v. Murzda, 116 N.J.L. 219, 223 (E. & A. 1936).  See also Buckner, 223 N.J. at 5 (explaining that "[w]hat the Constitution does not bar, either expressly or by clear implication, is left to the Legislature to

address"); DePascale v. State, 211 N.J. 40, 68 (2012) (Patterson, J., dissenting) (declaring that "it is the settled rule of judicial policy in this State that a legislative act will not be declared void unless its repugnancy to the [C]onstitution is clear beyond reasonable doubt" (quoting Gangemi v. Berry, 25 N.J. 1, 10 (1957) (internal quotation marks omitted))).

In analyzing whether N.J.S.A. 19:13-8 violates any of the asserted constitutional rights, we must first determine the appropriate test to be applied. Appellants rely upon Worden v. Mercer County Board of Elections, 61 N.J. 325 (1972), to support the application of a strict scrutiny test. In contrast, the Secretary argues that the statute need only pass the interest-balancing test articulated in Anderson-Burdick.

We hold that the Anderson-Burdick interest-balancing test is the appropriate test to use when evaluating the application of N.J.S.A. 19:13-8 to Malinowski and the Moderate Party's petitions. We have previously applied the Anderson-Burdick test in evaluating First and Fourteenth Amendment challenges to other election laws. See Rutgers Univ. Student Assembly (RUSA) v. Middlesex Cnty. Bd. of Elections, 446 N.J. Super. 221, 229-30 (App. Div. 2016); Council of Alt. Pol. Parties ("CAPP") v. N.J. Div. of Elections, 344 N.J. Super. 225, 236-37 (App. Div. 2001).

In RUSA, we found constitutional a statute that required all eligible voters to register to vote at least twenty-one days before an election. 446 N.J. Super. at 224-25. As an initial matter, we declined to apply Worden's strict scrutiny test because Worden "addressed regulations where similarly situated citizens were treated differently" rather than "[a] requirement subject[ing] all eligible persons to the same voter registration standards." Id. at 234. Next, applying the Anderson-Burdick test, we determined that "the fundamental State interest in preserving the integrity of New Jersey's electoral process . . . impos[ed] no unreasonable burden upon plaintiffs' right to vote." Id. at 225. Specifically, we reasoned the "registration requirement . . . impose[d] no more than a minimal burden upon plaintiffs' right to vote . . . [because other] statutes ensure[d] that our citizens [had] ample opportunities to register to vote." Id. at 234-35.

In CAPP, a group of minority political parties challenged, in relevant part, N.J.S.A. 19:1-1, which defined "political party," and N.J.S.A. 19:23-45, "which prohibit[ed] a voter from declaring a party affiliation other than Democrat or Republican." 344 N.J. Super. at 228. Our analysis focused on "whether the [statutes] . . . infringe[d] [on] [the minority parties'] First Amendment rights of expression and association and equal protection." Ibid. We first balanced the nature of the burdens imposed on the minority parties and the State's justification

for those burdens.  Id. at 242-44.  We then concluded that the Legislature's failure to afford the same opportunities to minority parties as given to the Democratic and Republican parties constituted an impermissible burden on the minority parties' constitutional rights.  Id. at 244.

Appellants contend that all claims related to the right to vote under the State Constitution should be evaluated under the strict scrutiny test.  Their reliance on Worden to support this position, however, is misguided.  Worden reviewed a restriction that prohibited college and graduate students in Mercer County from registering to vote where they resided in their college or university communities.  61 N.J. at 327-30.  In Worden, the New Jersey Supreme Court extensively analyzed federal constitutional law and "adopt[ed] the compelling state interest test . . . for compliance with the Federal Constitution . . . [and] for purposes of our . . . State Constitution and legislation."  Id. at 334-41, 348.  The Court then determined that the restriction against the students must be stricken because no compelling state interest justified it.  Id. at 346-48.

We do not read Worden as requiring the application of the strict scrutiny or compelling state interest test in this matter.  The statute at issue in Worden is distinguishable for two reasons:  (1) it treated a group of voters differently based on their student status; and (2) it directly interfered with their ability to exercise

26

their right to vote. In contrast, N.J.S.A. 19:13-8 applies equally to all candidates nominated for office and does not preclude voters from voting for the candidate of their choice. Instead, it limits what can be listed on the official ballot by precluding a candidate from accepting more than one party's nomination.

Applying the <u>Anderson-Burdick</u> interest-balancing test, we find that the minimal burden N.J.S.A. 19:13-8 imposes on appellants is justified by the State's compelling regulatory interests. Regarding the right to vote, N.J.S.A. 19:13-8 does not directly interfere with voters' ability to vote for their preferred candidate. A candidate's name, like Malinowski's, will still appear on the official ballot next to one political party. All voters remain free to vote for that candidate. <u>Sadloch v. Allan</u>, 25 N.J. 118, 122 (1957) (finding that the Legislature may adopt "reasonable regulations" to "control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses").

Next, concerning the right to free speech, political association, and assembly, although N.J.S.A. 19:13-8 may prevent a political party from officially nominating a candidate who has already been nominated by another party, it does not restrict a party from publicly endorsing or supporting that candidate. <u>See</u> <u>Timmons</u>, 520 U.S. at 361 (recognizing that, despite anti-fusion

statutes, a party "remains free to endorse whom it likes, to ally itself with others, to nominate candidates for office, and to spread its message to all who will listen"). This principle applies with equal force to a candidate's ability to align himself or herself with the viewpoints of another political party.

Lastly, concerning the right to equal protection under the law, N.J.S.A. 19:13-8 applies to all candidates nominated for office, from "major and minor[ity] parties alike." Id. at 360. Appellants argue that the statute disproportionately burdens minority parties. However, minority parties remain free to nominate their preferred candidate, so long as that candidate has not already been nominated by another party. Additionally, as the United States Supreme Court noted in Timmons, anti-fusion statutes do not prohibit minority parties from attempting to persuade a candidate from relinquishing another party's nomination in favor of their own. Ibid.

The Secretary contends that N.J.S.A. 19:13-8 serves "the State's important regulatory interests in preventing ballot manipulation, political gamesmanship, voter confusion, and decreased voter choice, maintaining voter confidence in party accountability, and maintaining the stability of the political system." In RUSA, we acknowledged that the State has "important [regulatory] interests in preventing voter fraud, ensuring public confidence in the integrity of the

A-3542-21

electoral process, and enabling voters to cast their ballots in an orderly fashion." 446 N.J. Super. at 240. Therefore, we hold that the Secretary has articulated valid interests in this matter.

This court has afforded the States "broad leeway in regulating elections to ensure they are carried out in a fair and efficient manner." Id. at 230 (citing Anderson, 460 U.S. at 788). Further, in Timmons, the United States Supreme Court found that anti-fusion laws may be used as a tool to advance regulatory interests in "ballot integrity and political stability," and other similar interests. 520 U.S. at 352. N.J.S.A. 19:13-8 is a permissible means for the State to advance important election-regulatory interests. We, therefore, hold that N.J.S.A. 19:13-8 is constitutional under the Anderson-Burdick interest-balancing test. Given that holding, we decline to reach appellants' arguments about the aggregation of cross-nominations.

VIII.

Appellants and amici argue that there are strong public policy interests supporting fusion voting. They contend that anti-fusion statutes help to perpetuate the two-party system. They also argue that minority parties can help to balance political divisiveness and reduce threats to our democratic system of government.

29

Many people considering those arguments may find them compelling. Those arguments, however, do not support declaring N.J.S.A. 19:13-8 unconstitutional under the State Constitution. See State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45 (1991) ("In considering the constitutionality of legislation, courts do not weigh its efficacy or wisdom."). Instead, appellants and amici are free under the State Constitution to advocate for and support legislative changes to address the issues that they have identified.

We, therefore, find no grounds for reversing the decisions the Secretary announced in her June 8, 2022 and July 19, 2022 letters.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

30                                                                A-3542-21